

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

RUSSELL LEROY STEVENS,                    §
                                          §
        Petitioner,                       §
                                          §
v.                                        §        2:06-CV-0206
                                          §
NATHANIEL QUARTERMAN, Director,           §
Texas Department of Criminal Justice,     §
Correctional Institutions Division,       §
                                          §
        Respondent.                       §

## REPORT AND RECOMMENDATION TO DISMISS
## PETITION FOR A WRIT OF HABEAS CORPUS

Came for consideration the Petition for a Writ of Habeas Corpus by a Person in State

Custody filed by petitioner RUSSELL LEROY STEVENS. For the reasons set forth below, it is the

opinion of the undersigned United States Magistrate Judge that the petition for a writ of habeas

corpus be DISMISSED as time barred.

I.
PROCEDURAL HISTORY[1]

On December 7, 1988, petitioner was indicted for the felony offense of aggravated sexual

assault out of the 251st Judicial District Court of Randall County, Texas as follows:

> [O]n or about the 1st day of August, A.D. 1988 . . . [petitioner] did then and there
> intentionally and knowingly, cause the penetration of the female sexual organ of a
> child namely: [JS], a person younger than 17 years of age and not the spouse of

---

[1]The procedural history is based exclusively upon documents petitioner has submitted to this Court with his habeas
application and online court documents and dockets.

HABS4\R&R\STEVENS-206.SOL-NOAPP:2

[petitioner] by the male sexual organ of [petitioner] and by acts and words occurring in the presence of [JS], did then and there threaten to cause the death of and serious bodily injury to [petitioner] and did then and there by acts and words place [JS] in fear that death and serious bodily injury would be imminently inflicted on [petitioner].[2]

Petitioner had previously been convicted, on November 21, 1986, in Moore County, Texas, of the offense of indecency with a child by contact. Petitioner received a 10-year sentence in that case. See State v. Stevens, Cause No. 2083. The Moore County offense was alleged to have occurred April 1, 1986.[3]

Petitioner retained attorney Selden Hale on the Randall County case. Mr. Hale, in correspondence dated January 16, 1989, advised petitioner's father the State had a "pretty good case" against petitioner, had offered to let petitioner plead guilty to a 25-year sentence to begin after he completed the prior 10-year sentence, and of his belief that the State would eventually lower their offer. In correspondence dated March 5, 1990, Mr. Hale advised the prosecuting attorney that petitioner, while a prisoner in TDCJ-CID, had gone "off the deep end," was in the mental correctional unit, and that Hale could not vouch for his state of mind because he had not received any letters from petitioner. For fourteen (14) months in 1989 and 1990, petitioner, an individual of average to above-average intelligence, was housed in a psychiatric unit of TDCJ-CID for major depression.

---

[2]The complaint, filed November 14, 1988, further stated:

[JS] is a pseudonym. [JS] is 15 years old, and is the natural daughter of [petitioner]. [JS] told affiant that on or about August 1, 1988, that [petitioner] was with her at a house trailer in Randall County, Texas, and that [petitioner] picked up a razor blade and asked her if she loved him. She stated that she did. [Petitioner] then replied, that's what they all say and cut himself with the razor blade. [Petitioner] then stated that there is a certain kind of love that expresses how much you love them. [Petitioner] then laid down on the couch beside [JS] and committed the sexual assault described above. After the assault [petitioner] started cutting his arm again with the razor blade, and told [JS] not to turn him in, and that he would kill himself before he would go back to prison. [JS] stated to affiant that during the course of the above described events she did believe that [petitioner] would kill himself.

[3]Petitioner's mental treatment for depression and suicidal thoughts began shortly after the commission of this offense.

On March 15, 1991, petitioner retained new counsel, Mr. Kent Birdsong.[4]  Petitioner's case was continued until April 1, 1991 based on new counsel becoming involved.  On April 5, 1991, pretrial motions were heard and trial was set for April 8, 1991.  On April 8, 1991, petitioner pled guilty to the charge, was convicted of the offense of aggravated sexual assault, and was sentenced to fifty (50) years imprisonment in the Texas Department of Criminal Justice, Institutional Division.  *See State v. Stevens*, Cause No. 6246-C.  Petitioner did not appeal his conviction or sentence to the state appellate court.  On April 24, 1991, a psychiatric exam conducted at petitioner's prison unit indicated petitioner's insight seemed limited, his reasoning and judgment was evaluated as poor, and his diagnosis of major depressive disorder was reaffirmed.

On September 22, 1995, petitioner, represented by retained counsel Mr. Jeff Blackburn, filed a state application for a writ of habeas corpus challenging his conviction on the ground he lacked the required mental capacity to voluntarily plead guilty to the aggravated sexual assault charge.  The state habeas petition also alleged petitioner had not informed his second trial counsel, Mr. Birdsong, of the 25-year plea offer purportedly made to petitioner's first trial counsel, Mr. Hale, arguing this failure was evidence of petitioner's inability to consult with his lawyer and inability to understand the proceedings against him.  On October 5, 1995, in response to the state habeas petition, Mr. Birdsong executed an affidavit stating,

> Nothing in my discussions with [petitioner] or his family members indicated to me that I was dealing with a person who did not have sufficient present ability to consult with me with a reasonable degree of understanding, nor was I placed under any concern that [petitioner] did not have a rational and a factual understanding of the proceedings against him.  My personal investigation of the facts in this criminal case did not raise any such concerns regarding [petitioner's] competency to stand trial.  For these reasons, I did not request any competency examination.
>
> I spent quite a bit of time trying to find out if there actually was an offer of twenty-

---

[4]In a subsequent affidavit, Mr. Birdsong stated he was retained by petitioner's father "because the Stevens' were unhappy with Selden Hale, as his Motion for continuance had been denied and the case would be going to trial."

five (25) years for [petitioner] from the District Attorney. Vickie Howard, the prosecutor who supposedly was the one who made the offer of twenty-five (25) years, reviewed the prosecution's file and was unable to confirm that the twenty-five (25) year offer was made. She testified at pretrial to this effect.

. . .

I felt no burden as a representative of the court to raise a competency issue.

. . .

In my opinion, the petitioner's guilty plea was voluntarily, knowingly, and intelligently made. The fifty (50) year sentence in this case resulted from a plea bargain with the State and such sentence was to run concurrently with [petitioner's] sentence resulting from his prior conviction for indecency with a child. The sentence and plea bargain in this case was reasonable in my opinion, especially when consideration was given to the facts in the case at bar and to the fact that [petitioner] had a prior felony conviction for indecency with a child by sexual contact and would be defending other extraneous offenses involving either sexual assaults upon children or sexual indecencies with children.

On October 11, 1995, the state trial court entered an Order Designating Fact Issues. In that Order, petitioner was ordered to file with the court, within 45 days, an affidavit setting forth the nature and extent of petitioner's psychological evaluations and treatment prior to his April 8, 1991 plea. In correspondence dated December 12, 1995, Mr. Blackburn advised petitioner the state trial court had asked him to obtain medical records from TDCJ and present such to the court before determining whether a hearing would be granted.

The state trial court granted Mr. Blackburn, petitioner's state habeas counsel, three (3) extensions to supplement the record as ordered, the last extension setting a deadline of April 15, 1996. On April 24, 1996, while petitioner's state habeas application was still pending, the federal AEDPA became effective establishing a 1-year statute of limitations on federal habeas corpus petitions. On September 10, 1997, almost 1 ½ years after the April 15, 1996 deadline, the state trial court entered findings that petitioner had abandoned his state habeas petition by failing to submit an affidavit setting forth the nature and extent of his psychological evaluations and treatment prior to

the date of his plea.  The trial court also entered conclusions of law finding petitioner's plea was freely and voluntarily made, that petitioner was competent to enter a plea of guilty, and that trial counsel provided effective assistance.  On November 5, 1997, the Texas Court of Criminal Appeals denied petitioner's application without written order based on the trial court findings without a hearing.  *Ex parte Stevens*, Application No. 35,437-01.

In correspondence dated  February 10, 1999,[5] more than 1 year and 3 months after petitioner's state habeas petition was denied, Mr. Blackburn advised petitioner that Mr. Hale had been negligent in the initial representation of petitioner but that such representation would not "'rise' to the level of 'ineffective assistance' as required by the courts" and that he did not believe they could obtain a new trial as a result of this negligence.  Mr. Blackburn further advised, however, that "despite our set back in Judge Pirtle's court with our writ being denied without hearing, we can get a new trial on the competency issue."  Noting he had been litigating this issue for well over two years, Mr. Blackburn advised he had obtained petitioner's medical records that would conclusively show petitioner was not in a proper mental state to enter his guilty plea and accept the 50-year sentence.  Mr. Blackburn advised he still believed they had a chance of "getting to the court" on this issue, that he was "not abandoning [petitioner's] cause," was not closing out petitioner's file, and was "pursuing [petitioner's] case until the very end," which would be when the Court of Criminal Appeals turned petitioner "down after a fully litigated writ hearing below."  Mr. Blackburn further advised he was going to personally work on petitioner's case again, but that did not mean he was "going to file a writ immediately."  Mr. Blackburn explained the judicial climate was very bad at the time, with the Court of Criminal Appeals denying all applications for habeas relief.  Mr.

---

[5]The letter appears to have been dictated January 26, 1999 but not transcribed until February 10, 1999.

Blackburn advised that under the new writ abuse rules, petitioner had only one real chance at

litigating this question and that they should wait until there was a sympathetic ear on the court

before filing a writ.  Mr. Blackburn stated petitioner would receive a status report on this writ

within one month from the date of the letter.

In correspondence dated August 12, 1999, Mr. Blackburn advised petitioner:

> As you know, we filed an application for writ of habeas corpus some time ago.  The
> ground that was alleged in that writ was that your plea of guilty was not voluntarily
> made.  After a several months long attempt to get medical records from TDC, we
> were finally frustrated to the extent that Judge Pirtle denied our writ without a
> hearing, claiming that it had simply been too long and he didn't want to continue it
> anymore.  I chose not to contest that finding because there are serious problems with
> filing repeated writs. . . . [W]e have only one real shot at a writ of habeas corpus.  I
> do not want to blow that shot. . . . [A]s of now we have a chance to refile the writ of
> habeas corpus application and bring it again, but it is a chance we must take very
> seriously.  We do not want to lose our only real opportunity to get your conviction
> set aside on that ground.  Regardless of the facts that we have, however, I believe
> that our chances of actually reversing your conviction and getting you a new trial
> based on that writ theory are fairly slim.

Mr. Blackburn advised a stronger approach might be to see if one of petitioner's accusers would

recant her accusation and such recantation could be presented to the Parole Board who might then

allow petitioner's release.  Mr. Blackburn stated he was going to wait to hear from petitioner before

proceeding, but that if petitioner wanted to pursue this approach, Mr. Blackburn was going to do

everything he could to pursue this approach and get petitioner out where he belonged.

The exhibits provided by petitioner do not contain any documentation from August 13, 1999

to September 12, 2005.

On September 13, 2005, petitioner's father, identified as Reverend Stevens, corresponded

with Mr. Blackburn.  In his letter, petitioner's father noted he had tried, unsuccessfully, for several

months to contact Mr. Blackburn by phone.  Reverend Stevens acknowledged the state habeas

petition filed by Mr. Blackburn in 1995 was terminated in 1996, with the state trial court's notation

that Mr. Blackburn had abandoned it. Petitioner's father noted ten (10) years had passed without his being able to visit with Mr. Blackburn. Reverend Stevens reminded Mr. Blackburn he had all the materials he needed to pursue petitioner's case back in 1999 and that he wanted Mr. Blackburn to finish the case. He requested Mr. Blackburn inform him whether he was going to, in fact, finish petitioner's case.

In October 2005, Reverend Stevens contacted Mr. Warren Clark, an Amarillo attorney, for an opinion as to whether it was possible for petitioner to prosecute either his original writ application or a new writ application. In correspondence dated October 10, 2005, Mr. Clark advised Reverend Stevens that the Court of Criminal Appeals adoption of the trial court's findings that petitioner was mentally competent to enter his plea and had received effective assistance of counsel disposed of petitioner's first writ alleging mental incompetency "once and for all." Mr. Clark explained petitioner, as a result of legislation passed in 1995, was now prohibited from filing any other writ claiming he was incompetent to enter his plea. Mr. Clark explained that at the time of his February 1999 letter, Mr. Blackburn knew or certainly should have known the law prohibited petitioner from relitigating his competency claim by way of another writ application because the Court of Criminal Appeals had ruled against petitioner on the merits of his first application. Mr. Clark opined Mr. Blackburn's letter reflected either "total ignorance of the law or intentionally misleading representations designed to lull [petitioner] into complacency."

Mr. Clark further stated his review of petitioner's mental health documentation did not establish petitioner's incompetency at the time of his plea and would not carry petitioner's burden of proof on the competency issue, even if given another opportunity to file another writ. Mr. Clark also advised petitioner he was prohibited from filing any additional state writ applications under state law.

In correspondence dated October 10, 2005, petitioner's father advised Mr. Blackburn he had learned Blackburn's promises in 1999 to file another writ for petitioner never materialized and that, based on consultations with two other attorneys, had learned there was "no hope of getting a writ before the court, as [Blackburn] closed the door for this when [he] abandoned the one in 1995." Petitioner's father instructed Blackburn that if these other attorneys were wrong, for Blackburn to prove them so by immediately preparing and filing a new writ. Petitioner's father also stated he believed Mr. Blackburn was pursuing a writ of habeas corpus on behalf of petitioner from 1999 until 2005, and instructed him to regain their trust "by taking immediate action on this case."

On January 23 and 29, 2006, petitioner's father drafted correspondence "to whom it may concern" setting out the facts of petitioner's case, and advising petitioner did not contribute to the abandonment of his state writ.

On February 13, 2006, petitioner, acting pro se and with the aid of a writ writer, filed an "Application for Subsequent Writ of Habeas Corpus" explaining the subsequent writ should be permitted based on habeas counsel's abandonment of the first writ application. In this application, petitioner again raised his lack of mental capacity to voluntarily plead guilty, as well as claims of ineffective assistance of trial and state habeas counsel. Petitioner also asserted actual innocence of the aggravation element of the offense for which he was convicted. On April 26, 2006, the Texas Court of Criminal Appeals denied petitioner's claim of ineffective assistance of habeas counsel on the basis that there is no right to counsel on habeas review. The court dismissed petitioner's remaining claims as abusive. *Ex Parte Stevens*, Application No. 35,437-02.

Petitioner, an inmate at the Huntsville Unit, attests he placed the instant federal habeas corpus application in the prison mail system on June 27, 2006. In his application, petitioner raises twenty-two (22) grounds in support of his contention that his confinement pursuant to the Randall

County aggravated sexual assault conviction and sentence is in violation of the Constitution and laws of the United States. Petitioner's application was received by and filed with the United States District Court for the Southern District, Houston Division, on June 30, 2006. The Southern District court transferred the case to this court.

## II.
## ALLEGATIONS

By his federal habeas application, petitioner alleges his conviction and sentence violate his rights under the United States Constitution because:

1. Petitioner was denied effective assistance of trial counsel because counsel:

   a. coerced a false confession from petitioner that he committed aggravated sexual assault when the offense committed was not aggravated;

   b. did not investigate petitioner's mental illness;

   c. failed to request a competency hearing;

   d. failed to disclose petitioner's mental illness to the court;

   e. failed to challenge the faulty indictment;

   f. failed to investigate mitigating evidence;

   g. gave misleading advice concerning a plea offer;

   h. committed perjury in an affidavit concerning petitioner's mental competency; and

   i. failed to interview a single witness.

2. The trial court accepted a plea from a mentally incompetent person;

3. The trial court did not determine petitioner's competency before accepting his plea; and

4. The District Attorney suppressed exculpatory evidence in the form of

HAB54\R&R\STEVENS-206.SOL-NOAPP:2                    9

petitioner's mental competency records from TDCJ-CID.

5.      The indictment against petitioner was faulty in that it alleged the wrong date;

6.      State habeas corpus counsel withheld exculpatory evidence;

7.      Petitioner was denied uniform sentencing, discretion, compassion and mercy;

8.      State habeas court used the perjured testimony of trial counsel to deny state habeas relief;

9.      The use of petitioner's coerced confession was fundamentally unfair;

10.     The state did not perform duty of *parens patriae* in mental proceeding;

11.     State habeas court failed to allow petitioner to develop record in state habeas proceeding by failing to set an evidentiary hearing in petitioner's state habeas proceedings;

12.     State habeas decision is contrary to objectively reasonable and clearly established law;

13.     The state trial and habeas court had a vendetta against petitioner;

14.     Ineffective assistance of state habeas counsel for failing to comply with orders of the state habeas court;

15.     State habeas counsel actively misled petitioner concerning disposition of his state habeas application and how to appeal the disposition;

16.     Ineffective assistance of state habeas counsel for abandoning state habeas application without notice to petitioner;

17.     State habeas counsel did not inform petitioner of the denial of his state habeas application for over two years;

18.     Petitioner was not allowed to challenge trial counsel's affidavit submitted during state habeas proceedings;

19.     "State substitution of false claims in place of true claims";

20.     Petitioner was denied an adequate, full and fair hearing in state habeas proceedings;

21.     Material facts were not adequately developed in petitioner's state habeas

proceedings; and

22.     State trial court's factual findings on habeas review were not supported by
        the record.

### III.
### STATUTE OF LIMITATIONS

Section 28 U.S.C. § 2244(d)(1) establishes a one-year limitation period for filing a

habeas petition in federal court. That subsection provides:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus
> by a person in custody pursuant to the judgment of a State court. The limitation
> period shall run from the latest of --

(A)     the date on which the judgment became final by the conclusion of direct
        review or the expiration of the time for seeking such review;

(B)     the date on which the impediment to filing an application created by State action in
        violation of the Constitution or laws of the United States is removed, if the applicant
        was prevented from filing by such State action;

(C)     the date on which the constitutional right asserted was initially recognized by
        the Supreme Court, if the right has been newly recognized by the Supreme
        Court and made retroactively applicable to cases on collateral review; or

(D)     the date on which the factual predicate of the claim or claims presented could
        have been discovered through the exercise of due diligence.

Title 28 U.S.C. § 2244(d)(2) further provides:

> The time during which a properly filed application for State post-conviction or other
> collateral review with respect to the pertinent judgment or claim is pending shall not
> be counted toward any period of limitation under this subsection.

Petitioner's claims relate only to the validity of his April 8, 1991 conviction. The record

does not reflect that any unconstitutional State action impeded petitioner in filing this federal writ,

28 U.S.C. § 2244(d)(1)(B), nor do petitioner's claims involve a constitutional right recognized by

the Supreme Court in the last year and made retroactive to cases on collateral review, 28 U.S.C. §

2244(d)(1)(C), nor has petitioner shown he could not have discovered the factual predicate of his claims until a date subsequent to the final conviction date. *See* 28 U.S.C. § 2244(d)(1)(D). Accordingly, the one-year limitation period began to run on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).

The state trial court imposed petitioner's 50-year sentence in open court on April 8, 1991. Petitioner had thirty (30) days in which to file a Notice of Appeal initiating a direct appeal of his conviction and sentence. *See* Tex. R. App. P. 26.2(a)(1). Petitioner did not file a direct appeal and the time period in which to file his Notice of Appeal expired May 8, 1991. Petitioner's conviction became final as of that date.

The one-year limitation period (AEDPA) was not enacted until April 24, 1996 and is not applied retroactively.[6] Consequently, a petitioner is afforded one year following the act's effective date of April 24, 1996, or until April 24, 1997, subject to any applicable tolling, to file a federal application for a writ of habeas corpus. *Flanagan v. Johnson*, 154 F.3d 196, 201 (5th Cir. 1998).

On September 22, 1995, prior to enactment of the AEDPA, petitioner filed, with the state trial court, his first state habeas application challenging the conviction. Such application was denied on November 5, 1997, after the enactment of the AEDPA. *In re Stevens*, No. 35,437-01. This state habeas case statutorily tolled the expiration of the April 24, 1997 deadline for filing a federal habeas application for approximately 560 days (from April 25, 1996 to November 5, 1997). Consequently, the deadline for filing petitioner's federal habeas application was extended to November 5, 1998. No federal habeas application for petitioner was filed on or before this date.

---

[6] The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, tit. I (1996), enacted on April 24, 1996.

Petitioner has submitted to this Court correspondence dated February 10, 1999 and August 12, 1999 reflecting state habeas counsel's representations concerning petitioner's first habeas corpus proceeding and his pursuit of a second state habeas corpus writ on petitioner's behalf. This correspondence, however, did not begin until more than three (3) months _after_ the expiration of the deadline for filing petitioner's federal habeas corpus petition. Petitioner has not submitted any evidence of active pursuit or inquiry on his part from November 5, 1997 to November 5, 1998, the expiration of the statutory deadline. Moreover, petitioner was aware as of August 12, 1999, that his first state habeas application had been denied, and he has not submitted any documents or evidence of active pursuit or inquiry on his part after August 12, 1999 until September 13, 2005.

Petitioner's second state habeas application challenging his conviction was filed with the state trial court on February 13, 2006, more than seven (7) years after the November 5, 1998 expiration of the limitations period. Such application was dismissed with a written order by the Texas Court of Criminal Appeals on April 26, 2006. *In re Stevens*, No. 35,437-02. This second state habeas application was not filed within the time period prior to limitations running so as to toll the limitation period. Petitioner placed his federal habeas application in the prison mail system on June 27, 2006, and such application was received and filed on June 30, 2006, almost eight (8) years after expiration of the November 5, 1998 deadline.

Petitioner argues equitable tolling should be applied in this case to render timely his 2006 federal habeas application, filed almost eight (8) years after the expiration of the statutory deadline. Equitable tolling is permitted only "in rare and exceptional circumstances." *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1998). As previously noted, petitioner has submitted correspondence dated in and around February 10, 1999, and October 10, 2005, reflecting state habeas counsel's representations. Accepting as true the representations petitioner attributes to his state habeas

counsel and the documents submitted to this Court, such facts present substantial questions regarding petitioner's state habeas actions. State habeas counsel has not, however, had an opportunity to respond and petitioner has omitted from his submission any documents during the August 12, 1999 to September 13, 2005 time period. However, even if state habeas counsel's representations were erroneous and/or misleading, such representations would not warrant equitable tolling unless they were intentional. Even then, an attorney's intentional deceit can warrant equitable tolling <u>only if</u> the petitioner shows he reasonably relied on his attorney's deceptive misrepresentations. *United States v. Wynn*, 292 F.3d 226, 230-31 (5th Cir. 2002). Even if this Court were to find Mr. Blackburn intentionally deceived petitioner, the correspondence does not establish petitioner's reliance was reasonable, in light of the fact such representations did not begin until over three (3) months after limitations ran and considering the length of time involved, *i.e.*, that petitioner has not shown any action by him for the 5-year-plus period from August 1999 to February 2005.

Mere attorney error or neglect is not an extraordinary circumstance and does not warrant equitable tolling. *Cousin v. Lensing*, 310 F.3d 843, 849 (5th Cir. 2002); *see also Fierro v. Cockrell*, 294 F.3d 674, 679 (5th Cir. 2002) ("counsel's erroneous interpretation of the statute of limitations provision cannot, by itself, excuse the failure to file [petitioner's] habeas petition in the district court within the one-year limitations period."). This is especially so as a prisoner has no constitutional right to counsel during post-conviction proceedings. *Coleman v. Thompson*, 501 U.S. 722, 752, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Ineffective assistance of counsel is irrelevant to the tolling decision, just as a petitioner's own ignorance or mistake does not warrant equitable tolling. Consequently, to the extent Mr. Blackburn was ineffective in his prosecution of petitioner's first state habeas application and possibly in failing to notify petitioner of the conclusion of his first state habeas proceeding, such does not provide a basis for any tolling of the statute of limitations for filing petitioner's federal habeas application.

The undersigned finds the circumstances of this case do not qualify as rare and exceptional circumstances justifying equitable tolling.  The doctrine of equitable tolling is not applied where a petitioner has failed to pursue relief diligently.  *Cousin*, 310 F.3d at 849.  Consequently, petitioner's federal habeas application is time barred and should be dismissed.

IV.
EXHAUSTION OF STATE COURT REMEDIES

Even if this case were not dismissed on the basis of limitations, all but two (2) of petitioner's claims are procedurally barred for failure to exhaust.  Section 28 U.S.C. § 2254 states, as relevant to this proceeding:

(b)(1)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—

(A)   the applicant has exhausted the remedies available in the courts of the State; or

(B)(I)  there is an absence of available State corrective process; or

(ii)   circumstances exist that render such process ineffective to protect the rights of the applicant.

(2)  An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) . . .

(c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254.  The exhaustion doctrine set forth in section 2254 requires that the state courts be given the initial opportunity to address and, if necessary, correct alleged deprivations of federal constitutional rights in state cases.  *Castille v. Peoples*, 489 U.S. 346, 349, 109 S.Ct. 1056, 1059

(1989).  The doctrine serves "to protect the state courts' role in the enforcement of federal law and

prevent disruption of state judicial proceedings."  *Rose v. Lundy*, 455 U.S. 509, 518, 102 S.Ct. 1198,

1203, 71 L.Ed.2d 379 (1982).

> Under our federal system, the federal and state courts are equally bound to guard and
> protect rights secured by the Constitution.  Because it would be unseemly in our dual
> system of government for a federal district court to upset a state court conviction
> without an opportunity to the state courts to correct a constitutional violation, federal
> courts apply the doctrine of comity, which teaches that one court should defer action
> on causes properly within its jurisdiction until the courts of another sovereignty with
> concurrent powers, and already cognizant of the litigation, have had an opportunity to
> pass upon the matter.

*Id.*  (brackets, internal quotation marks, and citations omitted).  To have exhausted his state

remedies, a habeas petitioner must have *fairly presented* the *substance* of his federal constitutional

claims to the state courts.  *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997), *cert. denied*, 523

U.S. 1139, 118 S.Ct. 1845, 140 L.Ed.2d 1094 (1998).  This requires that any federal constitutional

claim presented to the state courts be supported by the same factual allegations and legal theories

upon which the petitioner bases his federal claims.  *Picard v. Connor*, 404 U.S. 270, 276, 92 S.Ct.

509, 512, 30 L.Ed.2d 438 (1971).  Further, in order to satisfy the federal exhaustion requirement,

petitioner must fairly present to the **highest** state court **each** constitutional claim he wishes to assert

in his federal habeas petition.  *Skelton v. Whitley*, 950 F.2d 1037, 1041 (5th Cir.), *cert. denied sub*

*nom. Skelton v. Smith*, 506 U.S. 833, 113 S.Ct. 102, 121 L.Ed.2d 61 (1992); *Richardson v.*

*Procunier*, 762 F.2d 429, 431 (5th Cir. 1985); *Carter v. Estelle*, 677 F.2d 427, 443 (5th Cir. 1982),

*cert. denied*, 460 U.S. 1056, 103 S.Ct. 1508, 75 L.Ed.2d 937 (1983).  In the state of Texas, the Court

of Criminal Appeals in Austin, Texas is the highest court which has jurisdiction to review a

petitioner's confinement.  Tex. Code Crim. Proc. Ann. art. 44.45 (Vernon 1999).  Claims may be

presented to that court through an application for a writ of habeas corpus, *see* Tex. Code Crim. Proc.

Ann. art. 11.01 et seq. (Vernon 1999), or on direct appeal by a petition for discretionary review.

Petitioner's first state habeas application raised only the ground that he was mentally incompetent to enter a guilty plea. The Texas Court of Criminal Appeals denied this claim on the merits. This ground, which is also raised in the instant federal habeas application, is exhausted.

In his second state habeas application, petitioner reurged his claim of mental incompetency and raised the new claim of ineffective assistance of habeas counsel. The Texas Court of Criminal Appeals refused to re-hear petitioner's claim of incompetency and denied petitioner's claim of ineffective assistance of habeas counsel on the ground there is no Constitutional right to counsel on habeas review. Consequently, this ground, which is also raised in the instant federal habeas application is exhausted. All of the other claims raised in this federal habeas application are new claims never heard by the state's highest court. Consequently, with the exception of the claims that he was mentally incompetent at the time of his guilty plea and that his state habeas counsel was ineffective, the state courts were not given an opportunity to properly address the merits of petitioner's alleged deprivations of federal constitutional rights. Petitioner has not sufficiently exhausted his available state court remedies with regard to any of his claims other than the two (2) claims identified above.

Further, petitioner would be precluded, by the Texas abuse of the writ doctrine, *see* Tex. Code Crim. Proc. Ann. art. 11.07 § 4 , from raising his unexhausted allegations in a future state habeas application. *See* Tex. Code Crim. Proc. Art. 11.07 § 4. If a petitioner "fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would find the claims procedurally barred'," then

the claim is procedurally defaulted.[7] *Jones v. Jones*, 163 F.3d 285, 296 (5th Cir. 1998) (quoting

*Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997), *cert. denied*, 523 U.S. 1139, 118 S.Ct. 1845,

140 L.Ed.2d 1094 (1998) (quoting *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546,

115 L.Ed.2d 640 (1991)).  Here, because petitioner failed to exhaust any of his claims other than his

incompetency claim and ineffective assistance of habeas counsel claim, said claims, with the noted

exceptions, are procedurally defaulted.

  There is, however, a "cause and prejudice" exception to the bar for failure to exhaust.

"When the ground upon which the petitioner relies for habeas relief was not exhausted in state court

and state procedural rules would bar subsequent presentation of the argument," this Court will not

consider petitioner's unexhausted claim absent 'cause' and 'prejudice.'" *Beazley v. Johnson*, 2001

WL 118393, *15 (5th Cir. 2001) (quoting *Little v. Johnson*, 162 F.3d 855, 859 (5th Cir. 1998), *cert.*

*denied*, 526 U.S. 1118, 119 S.Ct. 1768, 143 L.Ed.2d 798 (1999)).  Federal habeas relief will not be

granted on a procedurally defaulted claim <u>unless</u> the petitioner can demonstrate *both* good cause for

the default *and* actual prejudice as a result of the alleged violation of federal law, *or* demonstrate

that failure to consider the claim will result in a fundamental miscarriage of justice. *Id.* (citing

*Moawad v. Anderson*, 143 F.3d 942, 947 (5th Cir.) , *cert. denied*, 525 U.S. 952, 119 S.Ct. 383, 142

L.Ed.2d 316 (1998) (pre-AEDPA);  *Nobles,* 127 F.3d at 423 n. 33 (post-AEDPA); *Williams v. Cain,*

125 F.3d 269, 276 (5th Cir.1997), *cert. denied*, 525 U.S. 859, 119 S.Ct. 144, 142 L.Ed.2d 116

(1998) (post-AEDPA); *cf. United States v. Flores*, 135 F.3d 1000, 1006 n. 23 (5th Cir.1998), *cert.*

---

[7]The abuse of the writ rule can be an adequate and independent state ground foreclosing federal habeas review. *Lowe v. Scott*, 48 F.3d 873, 875 (5th Cir. 1995).  Such a procedural rule that acts as a bar, however, must be "firmly established and regularly followed." *Ford v. Georgia*, 498 U.S. 411, 423, 111 S.Ct. 850, 112 L.Ed.2d 935 (1991).  The Fifth Circuit Court of Appeals has determined that the Texas abuse of the writ doctrine has been strictly and regularly applied since 1994. *Fuller v. Johnson*, 158 F.3d 903, 905 (5th Cir. 1998); *Emery v. Johnson,* 139 F.3d 191, 195, 201 (5th Cir. 1997), *cert. denied*, 525 U.S. 969, 119 S.Ct. 418, 142 L.Ed.2d 339 (1998).

*denied*, 525 U.S. 1091, 119 S.Ct. 846, 142 L.Ed.2d 700 (1999) (post-AEDPA, section 2255)).

Ineffective assistance of habeas counsel cannot constitute cause to overcome procedural default. *See*

*Matchett v. Dretke*, 380 F.3d 844, 849 (5th Cir. 2004); *Beazley v. Johnson*, 242 F.3d 248, 271 (5th

Cir. 2001).

    The undersigned finds no factors constituting just cause for petitioner's failure to raise his

allegations before the state's highest court. The claims, as well as the factual support for his claims,

were readily apparent at the time petitioner's state habeas applications were filed and petitioner

could have included such in his state actions. Because petitioner has failed to show sufficient cause

for his state procedural default, a "prejudice" analysis is not necessary. Further, the failure to

consider the claim will not result in a fundamental miscarriage of justice. Petitioner's claims, with

the exception of the incompetency claim and ineffective assistance of habeas counsel claim, have

been procedurally defaulted as a result of petitioner's failure to exhaust at the state court level, are

not cognizable in federal habeas proceedings, and should be dismissed in the event petitioner's

entire petition is not dismissed as time barred.

## V.
## STANDARD OF REVIEW

    Even if this Court were to find tolling available and reach petitioner's exhausted claims,

petitioner could not obtain federal habeas corpus relief with regard to these claims. The standards

of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) apply to

this case. *Lindh v. Murphy*, 521 U.S. 320, 326, 117 S.Ct. 2059, 2063, 138 L.Ed.2d 481 (1997);

*Williams v. Cain*, 125 F.3d 269, 274 (5th Cir. 1997). Consequently, petitioner may not obtain relief

in this Court with respect to any claim adjudicated on the merits in the state court proceedings

unless the adjudication of the claim:

(1)     resulted in a decision that was contrary to, or involved an unreasonable
        application of, clearly established Federal law, as determined by the Supreme
        Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the
        facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Further, all factual determinations made by a state court shall be presumed to

be correct and such presumption can only be rebutted by clear and convincing evidence presented

by petitioner. 28 U.S.C. § 2254(e).

Petitioner's first state habeas application alleging he was mentally incompetent to enter a

plea was raised in and considered by the Texas Court of Criminals Appeals. That court denied

petitioner's state habeas application without written order based on the trial court findings without a

hearing. *Ex parte Stevens*, App. No. WR-35,437-01. The ruling of the Texas Court of Criminal

Appeals on the grounds presented constitute an adjudication of petitioner's claims on the merits.

*Bledsue v. Johnson,* 188 F.3d 250, 257 (5th Cir. 1999). Petitioner's second state habeas application

alleging, as relevant here, his claim of ineffective assistance of habeas counsel was raised in and

considered by the Texas Court of Criminal Appeals. That court denied petitioner's claim on the

merits, finding there is no right to counsel on habeas review. *Ex parte Stevens*, App. No. WR-

35,437-02.

Consequently, this Court's review is limited to a determination of whether petitioner has

shown the state court's determination that petitioner's claims were without merit was based on an

unreasonable determination of the facts in light of the evidence before the state court, or whether

petitioner has shown the state habeas court's decision was contrary to, or involved an unreasonable

application of, clearly established federal law, as determined by the Supreme Court of the United

States. With regard to petitioner's claim of mental incompetency to enter a guilty plea, the state

trial court, without the assistance of petitioner's pre-plea psychological evaluations and treatment,

found petitioner's was competent to enter his plea and that the plea was freely and voluntarily made. The Texas Court of Criminal Appeals adopted these findings. Petitioner cannot show the state court's determination was based on an unreasonable determination of the facts in light of the evidence before it. Petitioner has now submitted, with his federal habeas petition, medical records reflecting diagnoses of major depression and borderline personality disorder. Such records, however, as also noted by Mr. Clark in his review of petitioner's case, would not demonstrate petitioner lacked the requisite mental capacity to voluntarily plead guilty and would not carry petitioner's burden of proof on the competency issue. More importantly, it is clear such records do not render the state court's competency determination unreasonable. Petitioner cannot obtain federal habeas corpus relief with regard to this claim.

Similarly, petitioner cannot show the state court's denial of petitioner's claim of ineffective assistance of state habeas counsel involved an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States. Moreover, "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." 28 U.S.C. 2254(I); *see also Ogan v. Cockrell*, 297 F.3d 349, 357 (5th Cir.), *cert. denied* 537 U.S. 1040, 123 S.Ct. 582, 154 L.Ed.2d 464 (2002). Petitioner cannot obtain federal habeas corpus relief with regard to this claim.

## VI.
## RECOMMENDATION

While the facts of this case and of the state habeas proceedings as presented by petitioner STEVENS raise concerns, the facts presented simply do not constitute any legal basis warranting equitable tolling to avoid dismissal of the federal petition as time barred. Consequently, it is the

RECOMMENDATION of the United States Magistrate Judge to the United States District Judge

that the Petition for Writ of Habeas Corpus by a Person in State Custody filed by petitioner

RUSSELL LEROY STEVENS be DISMISSED as time barred.

VII.
INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and

Recommendation to all parties by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this _____/0 4_____ day of July 2009.

CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

**\* NOTICE OF RIGHT TO OBJECT \***

Any party may object to these proposed findings, conclusions and recommendation.  In the event a party wishes to object, they are hereby NOTIFIED that the deadline for filing objections is eleven (11) days from the date of filing as indicated by the "entered" date above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b), and the parties are allowed a 3-day service by mail extension, Fed. R. Civ. P. 6(e).  Therefore, any objections must be filed **on or before the fourteenth (14th) day after this recommendation is filed.** *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b); R. 4(a)(1) of Miscellaneous Order No. 6, as authorized by Local Rule 3.1, Local Rules of the United States District Courts for the Northern District of Texas.

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation."  Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties.  A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services*

*Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).